Jacob Senko, Plaintiff-Appellee, v. LaCrosse Dredging Corporation, Defendant-Appellant.

Term No. 55–M–21.

Fourth District.
October 3, 1955.
Released for publication November 8, 1955.

Bradley, Pipin, Vetter & Eaton, of Chicago, and Pope & Driemeyer, of East St. Louis, for defendant-appellant.

Moran & Beatty, of Granite City, for plaintiff-appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

Jacob Senko brought this suit against his employer, LaCrosse Dredging Corporation, claiming that he had suffered personal injuries through the negligence of

said employer. After a jury verdict of $30,000 for plaintiff, the trial court required a remittitur and entered judgment for $20,000. The defendant's motion for judgment and for new trial were both denied.

The suit was filed under the provisions of Section 33 of the Merchant Marine Act of 1920, commonly known as the Jones Act, 46 U. S. C. A. Sec. 688. In substance, the Jones Act provides that seamen on vessels operating in navigable waters, who are injured in the course of their employment, shall have the same rights and remedies at law, which appertain to railway employees under other federal statutes. Questions presented on this appeal require a full statement of facts, and a review of the legislative and judicial background of the statute, since it is an unusual type of case in a state court.

Defendant operated a dredge on which plaintiff was employed. At the request of a labor union, defendant had erected a shed on land near its dredging operations, equipped with benches and a stove, so that, during off-duty intervals, the workmen would have a place to warm themselves and obtain shelter. The incident in question occurred in or near this shed on November 5, 1951.

About 10:45 p.m. plaintiff came from the dredge to the shed, where he heard another employee (the assistant superintendent) say that he would put some coal on the fire. This was done by removing a stove lid, picking up a coal bucket, and emptying the contents in the stove. Apparently plaintiff did not actually see the operation, but the fire flared up with a great flash and both men ran out, colliding at the doorway and falling. Or perhaps plaintiff was just approaching the door from outside and was met by the running man. Plaintiff was somewhat vague as to the details, but anyway, he fell. He claims severe injuries resulted to him.

It is plaintiff's theory that he is a seaman under the Jones Act, that there must have been something other than coal in the bucket to cause the flash, that he has not attempted to prove specific acts of negligence, but defendant should be held liable under the doctrine of res ipsa loquitur.

Defendant contends it is entitled to a directed verdict because: 1, plaintiff was not a member of a crew of seamen and is not under the Jones Act; 2, the dredge was not operating in navigable waters; and 3, there was no evidence of negligence on its part and no basis to apply the doctrine of res ipsa loquitur.

From examination of the abstract and briefs, we find no dispute as to the facts material to the first defense. It appears that, prior to plaintiff's said employment, the dredging equipment had been brought to the site by a tug, during which movement the crew of the tug managed the dredge and provided it with navigation lights. The dredge was anchored about 15 feet from shore in Gabaret Chute, which is a slough connected with the Mississippi, the purpose being to dredge out a by-pass around a rocky section of the river through the slough to a canal connected to the river at another point.

The dredge consisted of a scow or barge upon which was mounted dredging machinery, pumps, dynamo, etc. It operated day and night, so that it had a lighting system, including the white mooring lights required on stationary objects. A pipe ran from the barge to the shore, through which excavated material was pumped and disposed of. The pipe rested on pontoons, and this formed a walk, with handrail, by which the men could come and go. There was also a rowboat, but the distance from shore was too short to row, so in using the boat, it was simply given a push to move it the few feet.

The dredge had arms or poles called "spuds" which pushed into the bottom and held the position, and there

were also cables to the shore for additional anchorage. The barge could be moved slowly by operating the spuds in a walking fashion, also by winding the cables on a winch. Other than these contacts with the ground the barge had no means of locomotion.

Dredging operations were conducted by four men aboard, an operator, an engineer, an oiler, and plaintiff. Defendant did not furnish meals or sleeping quarters, all the men lived ashore, worked eight-hour shifts, were paid by the hour, and plaintiff drove back and forth daily from his home some 40 miles distant. Of the four men, the first three were members of a building crafts union, and plaintiff was a member of the Common Laborer's Union at Mt. Olive. He secured this employment through the union hall at Granite City, and all four men had union permits to work at this particular site.

According to a witness permitted to testify as to the usual duties of a laborer or deckhand on a dredge, the duties were to clean the deck, also the navigation lights, and to take soundings when the barge was in motion. However, these items were not pertinent to the plaintiff, for there were no navigation lights on the dredge, and he had taken soundings only for the purpose of noting the depth of the cut. He had nothing to do with moving the barge and testified he had never been aboard when it was moved. He gave as his main duties the delivery of supplies and proper storage thereof, bringing them when needed, and sometimes taking things ashore where other men were working at earth moving.

From the foregoing, it is apparent that, by any ordinary test, the plaintiff would not classify as a seaman. However, the courts have enlarged the meaning of the term. It was often said that a seaman aiding in navigation was not limited to those who can "hand, reef and steer." Thus it was easy to include all those who customarily traveled with a vessel in its movements, such

310

as a cook, a clerk, a stewardess, etc. But the broadening of the definition continued, until it came to include practically any workman whose duties required him to set foot on a ship at any time or place. Thus, longshoremen were designated as seamen, although they worked only at loading or unloading a vessel tied at the docks.

A longshoreman injured in the course of his duties on land would normally come under the state's Workmen's Compensation Act, but if the injury occurred on the vessel while it was in navigable waters, the state law could not apply, for the federal law had jurisdiction. These men were given some remedy by calling them seamen under the Jones Act.

Men who ply the seas, with its hazards, rigors and isolation, have long been regarded as wards of the court in admiralty, and this solicitude has been applied in courts of law. Men who board the ship only in the safety of a harbor, who work only an eight-hour shift thereon, who return to their families daily, and sleep in the comfort and security of their own beds every night are not in exactly the same position. Congress proceeded to enact new legislation, which was, in substance, a compensation act.

Possibly the men involved had something to do with the new legislation, since they were in position to observe the operation of both types of laws. The new law enacted by Congress, known as the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. Sec. 902 (1927), is patterned after prior compensation acts, provides recovery for personal injury in line of duty regardless of absence of negligence and makes the remedy limited and exclusive.

The legislative history of this act is reviewed in South Chicago Coal & Dock Co. v. Bassett, 309 U. S. 251, 60 S. Ct. 544, 84 L. Ed. 732. It appears that ships' masters and crews preferred to remain under the Jones Act; accordingly, a provision was inserted in the new

act excluding "seamen." Obviously, under the prevailing definition of that word, practically everybody that Congress intended to include, would have been excluded. As finally passed, the words "master or member of a crew" were substituted for "seamen." The Supreme Court held the purpose was:

"to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen, were still regarded as distinct from members of a 'crew.' They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation."

In the above case the man involved had the primary duty of loading coal on vessels in harbor, but he was aboard the fueling vessel when it was in motion, he was called a "deckhand" and occasionally had incidental duties in connection therewith, such as throwing a ship's rope or making the boat fast. The court attached no significance to his title and held these were duties which could readily be performed or aided by a harbor worker, and that he came under the compensation act, rather than the Jones Act, observing:

"that the primary duty of the decedent was to facilitate the flow of coal to the vessel being fueled, that he had no duties while the boat was in motion, that he slept at home and boarded off ship and was called each day as he was needed. Workers of that sort on harbor craft may appropriately be regarded as 'in the position of longshoremen or other casual workers on the water.' "

The legislative history of these acts and the interpretation thereof was repeated in Swanson v. Marra Bros., 328 U. S. 1, 66 S. Ct. 869, 90 L. Ed. 1045 (1946). The man involved was engaged in loading cargo onto

312

a vessel in Philadelphia harbor, and he was struck by a liferaft falling therefrom while he was on the pier. The suit was brought under the Jones Act and was dismissed by the trial court. The decision was affirmed on intermediate and final appeals. The Supreme Court recognized that the suit would have been proper under the Jones Act according to its own decisions prior to the passage of the Longshoremen's Act of 1927, making particular reference to International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, decided only six months before passage of the new statute. The court ruled:

"We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to members of the crew plying in navigable waters and to substitute for the right of recovery, recognized by the Haverty case, only such rights to compensation as are given by the Longshoremen's Act."

Other cases on the subject are similar in effect, see particularly, Walling v. Bay State Dredging & Contracting Co., 149 F.2d 346, 161 A. L. R. 825, certiorari denied 326 U. S. 760, 66 S. Ct. 140, 90 L. Ed. 457.

: ██ This court therefore holds as a general proposition: an employee whose principal duty is to load supplies on a vessel at anchor, and to perform incidental tasks of a common labor character, and who is not naturally and primarily on board to aid in navigation, cannot maintain an action under the Jones Act.

██ Further, as to this particular case: it being undisputed that plaintiff lived and boarded ashore, worked the hours of laborers only, was paid by the hour, had the primary duty of loading material and supplies on board, or unloading them, and of performing various other incidental common labor tasks, and who was not employed for nor used in the movement of the vessel from place to place, and was not aboard

except when the vessel was anchored, he cannot maintain an action under the Jones Act.

Further, that the provision of law making the compensation act the *exclusive* remedy of employees on vessels other than the master and members of the crew, is binding on the court, and cannot be evaded by asserting that a jury's notion of what law should be applied nullifies that provision, where there is no substantial dispute as to the relevant facts.

Cases which plaintiff contends are contrary to the foregoing holding have been considered by this court, particularly the Circuit Court cases upholding verdicts under the Jones Act, namely, Gahagan Const. Corp. v. Armao, 165 F.2d 301; Kibadeaux v. Standard Dredging Co., 81 F.2d 670; McKie v. Diamond Marine Co., 204 F.2d 132; Maryland Cas. Co. v. Lawson, 94 F.2d 190; Wilkes v. Mississippi River Sand & Gravel Co., 202 F.2d 383.

These cases cannot be regarded as in point, for the reason that they all involve employees who customarily accompanied the vessel on its voyages, whether extended or daily. This court does not hold that members of the crew or those aiding in navigation consist only of those who "hand, reef and steer." It is to be doubted employees who sign on for a voyage are excluded from the Jones Act, whether they be cooks or sometimes laborers.

Possibly phrases can be plucked from these opinions as indicating a tendency to broaden the definition of "crew" or of "aiding in navigation," but there will necessarily be close cases of employees traveling with the vessel. In the Gahagan case the plaintiff ate and slept on board on a trip from New York to Boston, worked out in the sea harbor when the tide permitted, and had some regular duties of a maritime nature.

In the Kibadeaux case the vessel went from port to port around the entire coast, and plaintiff was paid on a semimonthly basis, like other members of the crew.

314

The McKie case, by a divided court, involved a dredge which traveled about in Tabb's Bay off the Texas coast, and plaintiff worked at whatever travel there was by the vessel. In the Maryland Casualty Co. case the plaintiff was actually a common laborer, but he necessarily went to sea with the outfit, ate and slept aboard, making more or less regular runs with the crew. In the Wilkes case the court noted that the plaintiff had a permanent connection with the vessel such as to expose him to the same hazards of marine service as those shared by all aboard.

Whether these cases should be regarded as close or as encroaching on enacted legislation is immaterial, they do not apply to a plaintiff employed under a union permit to perform common labor on a local project, and whose duties are performed while the outfit is securely attached to the ground.

Since the plaintiff is not under the Jones Act, it is unnecessary for this court to pass upon other points raised.

In conclusion, it may be observed that plaintiff is not without remedy. The injuries occurred on land, so that the case is not confined to federal jurisdiction. The record discloses that plaintiff actually filed a claim with the Illinois Industrial Commission, and at a proceeding before its designated hearing officer plaintiff and defendant stipulated they were under the Illinois compensation act and that defendant had made payments thereunder including medical and hospital expenses, and 14 weeks' temporary and total disability compensation. We did not deem it necessary to make this any part of the decision herein.

For the reasons given, the judgment is reversed.

Judgment reversed.

BARDENS, P. J. and CULBERTSON, J., concur.