Jacob Senko, Plaintiff-Appellee, v. LaCrosse Dredging
Corp., Defendant-Appellant.

Term No. 57–M–9.

Fourth District.
September 25, 1957.
Released for publication February 26, 1958.

Robert L. Broderick, of East St. Louis, for appellant.

Moran & Beatty, of Granite City, for appellee.

**JUDGE SCHEINEMAN** delivered the opinion of the court.

This case has been previously considered by this court, with decision reported in 7 Ill.App.2d 307. Three points were argued, but we disposed of the case by outright reversal on the first ground, i. e., that plaintiff was not a "member of a crew" within the meaning of the Jones Act, so that his only right was under a compensation act, state or federal.

We found "no dispute as to the facts material to the first defense." (p. 309) Therefore, it was held (p. 314) "the provision of law making the compensa-

tion act the *exclusive* remedy of employees on vessels other than the master and members of the crew, is binding on the court, and cannot be evaded by asserting that a jury's notion of what law should be applied nullifies that provision, where there is no substantial dispute as to the relevant facts." The Supreme Court of the United States reversed this decision, holding that in the determination of whether a person was a member of a crew "juries have the same discretion they have in finding negligence."

The case is remanded to this court to review the other issues presented, of which the most important were: 2, the dredge was not operating in navigable waters; and 3, there was no evidence of negligence of the defendant, and no basis to apply the doctrine of res ipsa loquitur.

As to number 2, the place in question consists of back waters of the Mississippi called Gabaret Slough, which had not been used for navigation, although possibly small craft had plied therein, for fishing or pleasure. It was being dredged out to provide a by-pass around a rocky portion of the river, one end opening on the river, and the other on a canal connected to the river. The defendant contended that the slough was not a part of the navigable waters of the United States, since it had not been so used previously, and was not in condition for such use. Of course, it has since become a part of the navigable waters of the Mississippi. But the defense assumes that it was not a part of navigable waters until all the improvements were completed.

The defense relies mainly on the case of Iowa-Wisconsin Bridge Co., 84 F. Supp. 852, in which sloughs connected to the Mississippi were declared not navigable waters. However, those sloughs were not only not then navigable, but there is nothing in the case to

indicate that they could ever be made usable and useful to trade and commerce. The present case is distinguishable in this regard, when considered in the light of other authority.

■ The fact that waters are being used extensively for commerce is most persuasive that they are navigable, but lack of such use does not take it out of the power of Congress to make it navigable for future use. Economy Light & Power Co. v. U. S., 256 U. S. 113, 41 S. Ct. 409, 65 L. Ed. 847.

■■ A body of water comes under the term "navigable waters of the United States" if it is used, "or is susceptible of being used, in its ordinary condition, or *with reasonable improvements,* as a highway for commerce, over which trade and travel are *or may be* conducted in the customary modes of trade and travel on water." Davis v. United States, 185 F.2d 938, Cert. Den. 71 S. Ct. 495, 340 U. S. 932, 95 L. Ed. 673. In United States v. Appalachian Elect. Power Co., 311 U. S. 377, 61 S. Ct. 291, 85 L. Ed. 243, the court was considering a stream which was to be improved extensively to make it navigable. The following are some of the pertinent rules announced:

"A waterway, otherwise suitable for navigation, is not barred from that classification merely because artificial aids must make the highway suitable for use before commercial navigation may be undertaken. . . .

"There are obvious limits to such improvements as affecting navigability. These limits are necessarily a matter of degree. There must be a balance between cost and need at a time when the improvement would be useful. When once found to be navigable, a waterway remains so. . . .

"Nor is it necessary that the improvement be actually completed or even authorized. The power of Con-

157

gress over commerce is not to be hampered because of the necessity of reasonable improvements to make an interstate waterway available for traffic."

In the case at bar, the improvements were not only feasible, but were in actual progress, so that no question of degree, or relation of cost and use, could remain. The dredging operations were turning these waters into a part of the interstate route of the Mississippi, and under the cited authority they must be treated as navigable waters of the United States.

As to the third point, we do not here repeat the pertinent facts, which are set out in the prior opinion, reported in 7 Ill.App.2d 307. We do not overlook the fact that hindsight can always assert a plausible argument that a particular result should have been foreseen. However, as to dumping any combustible material on hot coals, we would suppose that a flare up is an expectable phenomenon. The ensuing panic, dashing about, and injury, present questions of causation.

The question whether a certain act is negligence, under the circumstances, and if so, whether that negligence is the proximate cause of an injury, are the normal questions for the jury to decide. It is only in an exceptional and extraordinary case that a reviewing court will take such questions from a jury and rule on them as questions of law. We cannot so classify this case, and therefore, a judgment notwithstanding the verdict cannot be awarded.

The question of awarding a new trial on the ground the verdict is contrary to the manifest weight of the evidence is not within our jurisdiction. We have already held that the decisions of the Supreme Court of the United States preclude this court from exercising this traditional and statutory power in a case arising under a federal statute. Pennell v. Baltimore & Ohio R. Co., 13 Ill.App.2d 433, 142 N.E.2d 497.

The Supreme Court of Illinois has reached the same conclusion, although by a divided court. Bowman v. Illinois Cent. R. Co., 11 Ill.2d 186, 142 N.E.2d 104. A recent decision of the United States Supreme Court confirms this view. Arnold v. Panhandle & S. F. Ry. Co., 353 U. S. 360, 77 S. Ct. 840, 1 L.Ed.2d 889.

Other questions were argued concerning rulings on evidence and instructions, which we have considered, but do not find sufficient merit in them to justify finding of reversible error. Accordingly, the judgment is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and BARDENS, J., concur.