608

**BEDDOO v. SMOOT SAND & GRAVEL CORPORATION.**

No. 8030.

United States Court of Appeals for the District of Columbia.

Argued June 2, 1942.

Decided June 8, 1942.

Mr. Jacob N. Halper, of Washington, D. C., for appellant.

Mr. Frank H. Myers, with whom Messrs. Norman B. Frost and Frederick N. Towers, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

GRONER, C. J.

This is an action, brought under the provisions of the Merchant Marine Act of 1920,[1] to recover damages for personal injuries sustained by appellant while employed on board a river dredge owned and operated by appellee. The District Court dismissed on the ground that appellant was not a "seaman" within the meaning of the act nor a "member of a crew" within the meaning of the *exclusion* provision of the Longshoremen's Act, 33 U.S.C.A. § 901 et seq. (made applicable to the District of Columbia as a workmen's compensation act by act of May 17, 1928).[2]

At the trial it was agreed that appellee has its principal office and place of business in the District of Columbia and is engaged in dredging sand and gravel from the banks of the Potomac River on land owned or leased by it for that purpose. In its dredging operation appellee uses a stripper dredge, which at the time of the accident was engaged in removing top soil, mud, and clay from the highlands immediately abutting the river. "The dredge was actually in an artificial water basin created by its own work and on land belonging to appellee". The method of work was, first, to remove the top soil down to the gravel levels, then with another dredge to scoop up the sand and gravel and dump it into scows for removal to the District. The dredges have no self-propulsion and are towed by tugs to the place of work and there held in place by anchor poles called "spuds". Four persons were employed on board,—the captain, whose job it was to supervise the work and operate the stripper bucket, the cook, the fireman, and appellant, the deck hand. The main duty of the latter was to coal up the dredge from the scow, the coal being used to fire the engine which operated the scoop shovel or bucket. Appellant was injured when a drive chain, which had jumped off the deck sprocket and wound around the sprocket of the main engine, struck him on the head as it was released by reversal of the engine.

[1] Act of June 5, 1920, Tit. 46 U.S.C.A. § 688.

[2] 45 Stat. 600, D.C.Code 1941, §§ 36—501, 36—502, 33 U.S.C.A. § 901 note.

The District Court held that his injury was solely compensable under the District of Columbia compensation act. The single question, therefore, is whether appellant, admittedly an employee of an employer engaged in business in the District of Columbia, was at the time of the injury a "member of a crew of any vessel". If he was not, obviously his remedy is to be found only within the terms of the Longshoremen's and Harbor Workers' Compensation Act, which Congress declared "shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia [except a master or member of the crew of any vessel], irrespective of the place where the injury or death occurs", and Section 5 of which makes the liability of the employer under the act "exclusive and in place of all other liability of such employer to the employee". If, on the other hand, he was a seaman and a member of the crew of a vessel under the general admiralty law, as altered and reshaped by the Merchant Marine Act, and if his injury occurred on the navigable waters of the United States, then his action begun under that act, was properly brought.

■ First. As originally used in maritime nomenclature, the term "seaman" meant a mariner or a person trained to reef and steer and maneuver a vessel. His contract of employment was evidenced by his signing the ship's articles. His duties and obligations were imposed and his rights and privileges protected by federal statutes. But under modern laws and latter day adjudications the term has lost its original rigidity and taken on a much wider scope. Thus, as used in the federal statutes, every person (apprentices excepted) who shall be employed or engaged in any capacity on board any vessel belonging to any citizen of the United States shall be deemed and taken to be a seaman.[3] And by various decisions of the courts, clerks, bar tenders, stewards, and stewardesses have been brought within the definition. In 1926 the Supreme Court, in International Stevedoring Co. v. Haverty,[4] expressly extended the provisions of Section 33 of the Marine Act to include stevedores when injured on a navigable waterway. In that case Mr. Justice Holmes said:

"We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship."

But in 1927 Congress, in the passage of the Longshoremen's and Harbor Workers' Act,[5] did in fact the things which Mr. Justice Holmes thought it was unbelievable that it would do; that is to say, it redefined the manner and degree of protection of maritime workers in accordance with their employment, and differently established the rights of stevedores and seamen.[6] Under this latter act stevedores employed on a vessel are removed from the operation and benefits of the Merchant Marine Act and are confined to the indemnity provided under the Longshoremen's Act and, as we have pointed out, since the national law has been made effective in the District of Columbia, every employee of an employer operating in the District of Columbia, unless a master or member of a crew of a vessel, is entitled to relief for injury *only* under the provisions of that act.

■ This brings us, then, to the question whether appellant was, when injured, a "member of a crew" of the dredge boat. This question, we think, is definitely answered by the Supreme Court in South Chicago C. & D. Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 546, 84 L.Ed. 732. In that case the decedent was employed on a vessel of 312 net tons used for harbor fueling of steamboats and other marine equipment. The vessel was licensed to operate in the Calumet River and harbor and in the Indiana River and harbor. It supplied coal to other vessels on their order, an operation consuming only a couple of hours. Its certificate of inspection required it to have on board a crew consisting of a licensed master and pilot, a licensed chief engineer, three seamen and one fireman. At the time in question the vessel had her full complement aboard, namely, a captain, an engineer, a fireman, and three deck hands, the decedent being one of the latter. His work on the vessel consisted of "facilitating the flow of coal from his boat to the vessel being fueled", throwing the ship's lines in making fast, and releasing them at the conclusion of a fueling opera-

---

[3] Tit. 46 U.S.C.A. § 713.
[4] 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157.

[5] Tit. 33 U.S.C.A. § 901 et seq.
[6] See the statement of Judge Coleman in Obrecht-Lynch Corp. v. Clark, D.C. Md., 30 F.2d 144, 146.

tion or at the dock. While performing these services he was drowned in the navigable waters of the United States. The question in the case was whether his widow was entitled to compensation under the Longshoremen's Act or under Section 33 of the Merchant Marine Act.

Answering the question, the Supreme Court first said that there was no doubt of the power of Congress to provide for the payment by employers of compensation to employees injured on a vessel in the navigable waters, and that for such employees Congress had provided compensation under the Longshoremen's Act and made it exclusive. "This," the Court said, "made inapplicable to such employees the provision, of Section 33 of the Merchant Marine Act". Passing then to the question whether or not the particular employee involved was at the time of his death a member of the crew of the vessel, the Court said the question should be answered in relation to his actual duties and that, since in that case these did not pertain to navigation aside from the incidental task of helping make the boat fast when mooring alongside another boat or at the dock, services which the Court thought could be performed by a harbor worker as well as by a seaman, and that since his primary duty was to facilitate the flow of coal to the vessel being fueled, he was appropriately within the class of longshoremen or other casual workers on the water and hence within the provisions of the Longshoremen's Act. In that case, as in the instant case, the man was carried on the pay roll as a deck hand, but the actual duties—the test applied by the Supreme Court—of the decedent there and of the injured here were so nearly alike as to make the rule in that case definitely applicable here. In addition, much of a maritime nature which pertained to the vessel, her master, her crew, and the work being done in that case, is lacking here. Therefore, if it be correct to say, as the Supreme Court has said, that the decedent in that case was not a member of the crew and accordingly was within the class of persons covered by the Longshoremen's Act, it inevitably follows that the same conclusion must be reached here.

Cases in the lower federal courts, both before and since the Bassett case, are generally to the same effect. In Dewald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810, a bargeman engaged in checking and supervising the loading and unloading of cargo was held not to be a seaman within the terms of the Merchant Marine Act, nor a member of the crew within the meaning of the Longshoremen's Act, and hence to be covered by the provisions of the latter act.

Likewise, in Harper v. Parker, D.C., 9 F.Supp. 744, Judge Chesnut, an admiralty judge of recognized authority, held that a scowman, whose duties were to look after the scow and its loading and to assist with the mooring lines, was not a master or member of a crew but was an employee under the terms of the Longshoremen's Act.

In Diomede v. Lowe, 2 Cir., 87 F.2d 296, certiorari denied Moran Bros. C. Co. v. Diomede, 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340, an employee in charge of a dump scow with no means of self-propulsion, whose duties were to supervise the loading and unloading and to remain on board at all times, and who was accidentally drowned in the navigable waters of the United States, was held not to be either the master or a member of the crew of a vessel within the meaning of the exclusion provision of the Longshoremen's Act. See, also, Hawn v. American S. S. Co., 2 Cir., 107 F.2d 999; Cantey v. McLain Line, Inc., D.C., 32 F.Supp. 1023, affirmed, 2 Cir., 114 F.2d 1017; Moore Drydock Co. v. Pillsbury, 9 Cir., 100 F.2d 245; Union Oil Co. v. Pillsbury, 9 Cir., 63 F.2d 925.

Second. It is at least very doubtful whether, in the light of the agreed facts, the character of the work being done by the dredge at the time of the injury was itself maritime, so as to bring appellant, while doing the work, within the admiralty jurisdiction. Cf. The Montezuma, 2 Cir., 19 F.2d 355. The facts stipulated show that at the time of injury the dredge was removing the top soil from the Oxon Hill farm immediately adjacent to the river front. As a result of this, "the dredge was actually in an artificial water basin created by its own work and on land belonging to the defendant [appellee]". If this statement be accepted literally, it is apparent that the work was not then being done upon a navigable waterway of the United States, but was a dredging operation in all respects as if the dredge were actually located on the land. For a full discussion of this aspect of the subject in cases parallel or nearly parallel in their facts to those confronting us here, see Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, 672; Fuentes v. Gulf Coast Dredging Co., 5 Cir.,

54 F.2d 69; United Dredging Co. v. Lindberg, 5 Cir., 18 F.2d 453. But we need not pursue this phase of the question, for we are of opinion that appellant's case is covered by the Longshoremen's Act, as that act is made applicable to a District of Columbia employer.

Affirmed.