Elzie TUDER, Jr., Plaintiff,

v.

**MATERIAL SERVICE CORPORATION,**
a corporation, Defendant.

**No. 58 C 232.**

United States District Court
N. D. Illinois, E. D.

Oct. 1, 1959.

Jack L. Sachs and Harry A. Sewell, Chicago, Ill., for plaintiff.

Schradzke, Gould & Ratner, Stephen A. Milwid and Lord, Bissell & Brook, Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

Plaintiff, Elzie Tuder, Jr., brings this action against defendant, Material Service Corporation, under the Jones Act, 46 U.S.C.A. § 688, for injuries suffered by him in the course of his employment at defendant's sand and gravel pit in Morris, Illinois. Defendant, in addition

to its answer, has pleaded the following affirmative defenses which are now before me for disposition:

(1) Plaintiff and defendant are bound by the provisions of the Illinois Workmen's Compensation Act, (Chapter 48, 1957, Illinois Revised Statutes, Section 138ff, as amended) in that plaintiff was employed by defendant as a laborer under the provisions of said statute and was in no way engaged in any project for the purposes of navigation;

(2) Plaintiff has elected to become bound by said Act and has filed a claim before the Industrial Commission of the State of Illinois which bars any further relief; and alternatively,

(3) At the time of the alleged injuries, the parties were operating under and bound by the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

It appears that the question raised by defendant's affirmative defenses is the status of the plaintiff at the time of his injury. Specifically, was the injury covered by the Jones Act, the Longshoremen's and Harbor Workers' Compensation Act and/or the Illinois Workmen's Compensation Act?

The following uncontradicted facts are revealed from the affidavits, exhibits, pleadings and briefs of the parties:

The sand and gravel pit at Morris, Illinois, was originally a dry pit operation with the material being loaded in trucks and hauled out. In the Spring of 1955, defendant excavated a canal from the Illinois River for some 3,550 feet, 80 feet wide, with a depth of 10 feet which connected the Illinois River to the sand and gravel pit supplying water thereto and making it a wet pit operation. The canal was constructed through lands owned and leased by defendant; leads only to defendant's plant; and is used exclusively by defendant for gaining access to the Illinois River.

Defendant's sand and gravel processing plant is constructed on three barges permanently joined together in a line with an overall length of 470 feet and consists of crushers, conveyors, screens, pumps, and electrical equipment installed in fixed positions. The combined weight of the plant is 2,500 to 3,000 tons. The operation consists of hydraulically washing down a dry bank. A dredge then scoops up and pumps the material of mine run sand and gravel through a 16-inch pipeline to the processing plant using the water as the vehicle to carry the sand and gravel. At the plant, the material is washed and sized by means of a conveyor, loaded into barges tied alongside the plant. As a barge is loaded, it is moved forward to assure even loading by means of a power winch on the plant. When a barge is completely loaded, a small pusher boat takes it from the plant out the canal to the Illinois River where it is picked up by a river towboat and transported to its destination.

The dredge is permitted to move short distances to wash the bank hydraulically and dredge the material and is connected to the plant only by means of the pipeline which is mounted on pontoons to permit some movement of the dredge. The plant, however, is firmly fixed to the bottom of the wet pit by means of five spuds or pilings driven into the ground and attached to the plant.

Plaintiff, by way of affidavit, has set out the nature of his employment and the circumstances surrounding his injury as follows:

"My first duties with Material Service Corp. was as deck hand on one of their tug boats which moved the loading barges in position to be loaded and taking the barges already loaded and making up tow for transporting them in quantities on the Illinois River. Another boat would pick up the barges when we had a full tow and take them to their destination. I remained on this job until cold weather prevented operation of the screening Plant in Morris and then they moved all the

equipment to Lockport, Ill. There I worked on repairs as Laborer all Winter and when the weather permitted they moved the Plant back to Morris for operation again. Then I was working as Laborer in Morris on the Floating equipment. Then after a short while reduction of force became imperative and rather than laying me off I was transferred to Lockport, Ill. to work in their Shop operations there. But after 3 weeks I was called back to Morris to work as helper on the Gravel Screening Plant as production had increased to the point where we had to run two shifts.

I worked on the Gravel Screening Plant as my regular job. But on Saturday May 5, 1956 a man was absent in the Sand Screening Plant and I was taken from my regular job and ordered to perform his duties and I did so. While I was working on this job it requires you to go from the Plant to the loading barge and check the load. And I checked the load and was stepping from the loading barge to the Plant where there is a cable used for moving the loading barge which was definitely rigged in an unsafe manner that I was unaware of since it was my first day on this particular job. The cable should have been hooked from the first cavel on the loading barge to the power Winch located on the screening Plant. But instead it was hooked on the last cavel on the far end of the barge and just run alongside all the other cavels back to the power Winch and when strain was taken on the cable or the barge moved it was apt to slip off the first cavel. Since the loading barge was about 28 inches lower than the Plant at this time. And that's what it did just as I stepped from the barge to the plant. Ted Wills was taking strain on the cable with the power Winch that I was unaware of at the time and the cable slipped and hit me about my feet and threw me against the barge and then into the water."

Although the Jones Act provides a cause of action for "any seaman who shall suffer personal injury in the course of his employment", since the passage of the Longshoremen's and Harbor Workers' Compensation Act in 1927, the Supreme Court has restricted the benefits of the Jones Act to "members of the crew of a vessel". Senko v. La Crosse Dredging Corp., 352 U.S. 370, 371, 77 S.Ct. 415, 416, 1 L.Ed. 404; Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. The determination of whether plaintiff is a "member of the crew of a vessel" is a finding of fact based upon the circumstances of the instant case. Senko v. La Crosse Dredging Corp., supra. Though such factual determination is usually for the jury, it is clear that I may hold the evidence insufficient to warrant such a finding by the jury and rule as a matter of law that plaintiff is not a "member of the crew of a vessel". Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 275.

It has been generally stated by the courts and commentators that the test for determining whether an employee is a "member of the crew of a vessel", is as follows: (1) The vessel must be in navigation; (2) There must be a more or less permanent connection with the vessel; (3) The worker must be aboard primarily to aid in navigation. Senko v. La Crosse Dredging Corp., supra, 352 U.S. at page 375, 77 S.Ct. at page 416; Nelson v. Greene Line Steamers, 6 Cir., 255 F.2d 31, 33; Wilkes v. Mississippi River Sand & Gravel Co., 6 Cir., 202 F.2d 383, 388; Carumbo v. Cape Cod S.S. Co., 1 Cir., 123 F.2d 991, 995; Morris, the Law of Seamen, Vol. 2, Sec. 656, p. 318. However, it is clear that the above test cannot be applied literally because, for example, in regard to the requirement that a vessel be in navigation, it has been held that a vessel moored to a wharf, or actually spudded into the bot-

tom of the sea, as well as dredges, are covered by the Jones Act. Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754; Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737; Senko v. La Crosse Dredging Corp., supra; Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775; McKie v. Diamond Marine Co., 5 Cir., 204 F.2d 132. As to the requirement that the worker must be primarily aboard to aid in navigation, it is more or less accepted that nearly everyone who is aboard the vessel in a capacity which contributes to the accomplishment of her mission is covered by the Jones Act. Perez v. Marine Transport Lines, D.C., 160 F.Supp. 853, 855, and cases therein cited. The difficulties which may arise in applying the above test are aptly demonstrated by the dissenting opinions of Mr. Justice Harlan in Butler v. Whiteman, supra; Grimes v. Raymond Concrete Pile Co., supra; and Senko v. La Crosse Dredging Corp., supra. The Court, in Perez v. Marine Transport Lines, supra, being well appraised of the perplexities involved in the application of the above test, has, after a consideration of all the authorities, proposed the following common sense test at page 856 of 160 F.Supp.:

"As long as a vessel is buoyant and capable of being floated from one location to another to accomplish her mission, members of her crew, meaning everyone employed aboard, on a more or less permanent basis, may be covered by the Jones Act."

Unfortunately, the very simplicity of such a test lends itself to such broad speculations, that its usefulness would be lost in the maze of particular situations. After a careful reading of the various decisions as well as commentaries, it seems to me that it would be error to formulate any test for the determination of Jones Act coverage since no test would adequately cover the full gamut of decisions which now give interpretation to the Act. Until the Supreme Court of the United States lays down a precise test capable of factual analysis, it is my opinion that, in each case involving the question of Jones Act coverage, the court must be appraised and the jury instructed as to the impact of the various court holdings in regard to the broad test generally employed. Armed with this knowledge, the emphasis should be placed upon the facts of the instant case.

I am well aware of recent decisions which demonstrate strong inclination upon the part of the Supreme Court to leave the factual determination of whether an employee is a "seaman" within the purview of the Jones Act in the hands of the jury. Butler v. Whiteman, supra; Grimes v. Raymond Concrete Pile Co., supra. However, it is my opinion that, as a matter of law (Desper v. Starved Rock Ferry Co., supra), plaintiff was not a "member of the crew of a vessel" at the time of his injury and is not entitled to any benefits under the Jones Act. My decision is not based upon any general test, but upon an exhaustive analysis of the various cases and commentaries interpreting the coverage of the Jones Act as seen in light of the plain uncontradicted facts of the instant case. For purposes of clarity, I have attempted to summarize the relevant factors:

(1) The sole and exclusive use made of the canal and wet pit which were excavated by defendant on defendant's private property, are in aid of defendant's mining operations and to gain access to the Illinois River. Iowa-Wisconsin Bridge Co. v. U. S., 84 F.Supp. 852, 866, 114 Ct.Cl. 464;

(2) The dredge was actually in an artificial water basin created by its own work and on land belonging to defendant. The work was not being done upon a navigable waterway of the United States, but was a dredging operation in all respects as if the dredge were actually located on land. Beddoo v. Smoot Sand & Gravel Corp., 76

U.S.App.D.C. 39, 128 F.2d 608, 610;

(3) Defendant's processing plant upon which plaintiff worked at the time of his injury was firmly attached to the bottom of the wet pit by means of spuds or pilings. It never has moved from the wet pit. It is shifted slightly to keep up with mining operations. The factual situation is entirely different from Grimes v. Raymond Concrete Pile Co., supra; Senko v. La Crosse Dredging Corp., supra; Gianfala v. Texas Company, supra. Plaintiff's relationship to the loading barges "did not pertain to navigation" and are much like those described by the Supreme Court in South Chicago Coal & Dock Co. v. Basset, 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732. See also Perez v. Marine Transport Lines, supra;

(4) Plaintiff was not employed upon defendant's "processing plant" or "barges" on a more or less permanent basis. On the contrary, plaintiff was employed as a laborer, was a member of a labor union, and worked on barges, in defendant's shop in Lockport, Illinois, on the gravel screening plant, and when a man was sick, on the sand screening plant where he was injured. Desper v. Starved Rock Ferry Co., supra; Zientek v. Reading Co., 3 Cir., 220 F.2d 183; Merritt-Chapman & Scott v. Willard, 2 Cir., 189 F.2d 791; Perez v. Marine Transport Lines, supra.

Since I hold that plaintiff does not fall within the purview of the Jones Act, I do not reach the remaining two affirmative defenses. The complaint is dismissed. Judgment for defendant. Beegle v. Thomson, 7 Cir., 138 F.2d 875, 880, 881; Lavine v. Shapiro, 7 Cir., 257 F.2d 14; Foster v. General Motors Corp., 7 Cir., 191 F.2d 907, 912.