**Hylas N. HASTINGS, Appellant,**

v.

**Carl D. MANN, t/a Mann's Harbor Marina, Mann's Harbor, North Carolina, Appellee.**

**No. 9524.**

United States Court of Appeals Fourth Circuit.

Argued Sept. 21, 1964.

Decided Jan. 11, 1965.

Certiorari Denied April 5, 1965. See 85 S.Ct. 1106.

Walter B. Martin, Jr., Norfolk, Va. (Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant.

Gerald F. White, Elizabeth, N. C. (Martin Kellogg, Jr., Manteo, N. C., and Aydlett & White, Elizabeth City, N. C., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge.

By a libel in Admiralty Hastings sought to recover damages for injuries he sustained when he slipped and fell upon a ramp designed for the launching of small boats in Pamlico Sound, North Carolina. At the time, he was attempting to launch his own small outboard motor boat, and he was standing in the navigable waters of the Sound when the accident occurred.

We think the District Court properly dismissed the libel as not being within the Admiralty jurisdiction.

The boat launching ramp, owned by Mann, the operator of the small boat marina, was provided for the convenience of his patrons in launching and retrieving their small boats, for which each patron paid a fee of one dollar. The ramp followed the slope of the land from a point some distance above high water to a point well below low water. No portion of it was afloat, for the underwater portion of the launching ramp was securely fastened to the bottom. It was an extension of the land, and there is no jurisdiction in Admiralty to award damages for injuries suffered upon it, unless caused by a vessel.

Traditionally, Admiralty's jurisdiction to grant redress for maritime wrongs was limited to those in which the harmful effect of the wrong was suffered at sea. It was thus held in The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125, that there was no jurisdiction in Admiralty to award damages against a vessel for loss caused by a fire which had spread to a pier and its associated warehouses from the vessel. Since the tort was consummated upon land and the injury suffered there, the tort was regarded as local in nature and not cognizable in Admiralty.

The rule of The Plymouth has been modified, of course, by the Admiralty Jurisdiction Extension Act of 1948.[1] That statute gives Admiralty jurisdiction of such torts when caused by a vessel on navigable waters. The traditional distinctions remain, however, to limit Admiralty's jurisdiction when the instrumentality which caused the wrong was not a vessel on navigable waters.

In The Plymouth, the fire-damaged pier was treated as land. Since then, it has been uniformly held that piers, docks, wharves and similar structures extending over navigable waters are extensions of land, though their use and purpose be maritime. Damage to such structures and personal injuries suffered by persons while upon such structures are not compensable in Admiralty, unless, under the 1948 Act, caused by a vessel on navigable waters.[2]

To come within the land extension rule, of course, the structure must be firmly attached to the land. A vessel moored to a dock does not become an extension of the land nor do other structures secured to the shore by cables, or other temporary means.[3]

Lighthouses, beacons, buoys and other navigational aids are not encompassed within the land extension doctrine.[4] Usually, they are surrounded by water and they have historically been regarded as subjects of Admiralty jurisdiction. They are readily distinguishable from piers and wharves extending over navigable waters and designed and used for the purpose of providing access to vessels afloat for people and land based vehicles and equipment.

1. 46 U.S.C.A. § 740.

2. T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520; Cleveland Terminal & Valley R. R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508; Netherlands American Steam Navigation Co. v. Gallagher, 2 Cir., 282 F. 171; American Export Lines, Inc. v. Revel, 4 Cir., 266 F.2d 82; McGuire v. City of New York, D.C., 192 F.Supp. 866; 1 Benedict on Admiralty 354.

3. The Mackinaw, D.C.Or., 165 F. 351; The M. R. Brazos, S.D.N.Y., Fed.Case No. 9,898.

4. The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L.Ed. 236.

■ The launching ramp with which we deal differs, of course, from a pier or wharf, the seaward portions of which extend over navigable waters but the surfaces of which are not beneath them. That difference is immaterial. Launching ramps, both in their seaward and land portions, are as firmly fixed to the land as is the pier or the wharf. They are designed to permit land based trailers to approach to, or beyond, the water's edge so as to facilitate the launching or the recovery of the boats they are designed to carry. Their purpose and their use are as an extension of land, providing a firm means of closer approach to deep waters for boat-carrying, land based vehicles and for the people who handle them. In the application of the land extension doctrine, there appears no logical basis for distinction between a partially submerged ramp and a pier, the surface of which is dry.

The most closely analogous case we have found is that of The Professor Morse, D.C.N.J., 23 F. 803. It was there held that a marine railroad was an extension of the land. "Its character," said the Court, "is not changed because the ways ran down below the ebb and flow of the tide, to facilitate the transfer of vessels from the water to the shore."

Other articles placed beneath navigable waters but affixed to the shore are not regarded as within Admiralty's jurisdiction. Thus, electric cables and pipe lines laid on the bottom beneath navigable waters and extending to the shore have been held to be extensions of land, so that damages for injury to them are not recoverable in Admiralty,[5] unless, of course, under the Admiralty Extension Act, the harm is caused by a vessel on navigable waters.

The fact that the libelant's feet were awash, when he slipped and fell on the ramp, does not alter the nature and character of the ramp or enlarge Admiralty's jurisdiction to award damages for injuries occurring upon it.[6]

The rights of the boat operator and the jurisdiction of Admiralty ought not to depend upon such empty distinctions as might be said to arise out of his immediate location on the launching ramp at the time of the injury. Whether, at the time the injury was sustained, he was above or below the high water mark, whether he was landward or seaward of the actual edge of the water, his rights should be the same, and they should be determinable in the same court. Neither the purpose of the ramp nor that of the person using it varies when he moves from one portion of it to another. If his feet are awash, he is still standing upon an extension of the land in the same sense as is a worker upon a pier, who, when injured, is well seaward of both high and low water.

We think the District Court properly concluded that, since the submerged portion of the launching ramp was firmly affixed to the land, it is an extension of the land, and the plaintiff's injury is not cognizable in Admiralty.

Affirmed.

5. Nippon Yusen Kabushiki Kaisha v. Great Western Power Co., 9 Cir., 17 F.2d 239; The Russell No. 6, E.D.N.Y., 42 F.Supp. 904. (Disapproving earlier district court decisions to the contrary.)

6. See Reinhardt v. Newport Flying Service Corp., 232 N.Y. 115, 133 N.E. 371, 18 A.L.R. 1324, in which the injury to the claimant, who was waist deep in navigable waters, was held to be within Admiralty's jurisdiction only because the seaplane he was attempting to secure was held to be a vessel; McGuire v. City of New York, S.D.N.Y., 192 F.Supp. 866, in which the claim of a bather in navigable waters who stepped upon a sharp object on the bottom was held not cognizable in Admiralty.