Joseph **CHAGOIS**, Plaintiff-Appellee, Cross-Appellant,

v.

**LYKES BROS. STEAMSHIP COMPANY,** Inc., Defendant-Appellant, Cross-Appellee.

No. 29639.

United States Court of Appeals, Fifth Circuit.

March 14, 1972.

Rehearing Denied May 25, 1972.

---

Edmund E. Woodley, Lake Charles, La., for cross-appellant.

Joseph E. Bass, Jr., Lake Charles, La., for cross-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

The plaintiff, Joseph Chagois, was injured while he was engaged as a longshoreman in the loading of the SS SUE LYKES owned by the defendant, Lykes Brothers Steamship Company, Inc. Chagois was working in a boxcar on shore and was injured by an auger he was using to channel loose rice from the floor of a boxcar into a hopper for load-

ing on the ship. Chagois was an employee of Lake Charles Stevedores, Inc. which owned and controlled the auger.[1] The district court held that the doctrine of seaworthiness applied and gave judgment for the longshoreman against the shipowner.

The shipowner appealed contending that the warranty of seaworthiness did not extend to a longshoreman operating equipment on shore over which the shipowner had no control and that the warranty of seaworthiness did not apply because Chagois was not "loading" the vessel at the time of injury. Chagois cross-appealed asking for increased damages and interest. This Court affirmed the district court. 432 F.2d 388 (1970). We recognized the rule in this Circuit that "a longshoreman injured while working on board ship or on the pier during a loading operation may recover from the shipowner because of the unseaworthiness of any shore-based loading equipment." 432 F.2d at 394. We expressed the view of this Circuit that the applicability of the warranty of seaworthiness "depends not on plaintiff's status or location but primarily upon the type of work he does and its relationship to the ship . . . The work of loading and unloading the ship is, without a doubt, work in the ship's service, and any longshoreman injured while loading or unloading a ship may avail himself of the unseaworthiness remedy." 432 F.2d at 391. In addition, we repeated this Circuit's view that "the shipowner's liability is not affected by the fact that the defective loading equipment was owned and operated exclusively by the stevedore." 432 F.2d at 394. We concluded, "Since Chagois was participating in a loading operation he is entitled to the protection of the seaworthiness warranty." 432 F.2d at 394.[2]

On December 13, 1971, the United States Supreme Court decided Victory Carriers v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383. In that case, the longshoreman was injured on shore while he was operating a forklift in the process of loading a ship. The longshoreman was an employee of the stevedore company, and the forklift was owned and under the control of the stevedore company. The district court granted summary judgment for the defendant on the ground that the doctrines of seaworthiness did not extend to the longshoreman because he was not engaged in loading the vessel. This Court reversed, holding that the longshoreman was engaged in loading the vessel. 432 F.2d 376 (1970). The Supreme Court, over the dissents of Mr. Justice Douglas and Mr. Justice Brennan, reversed.

> [T]he threshold issue is whether maritime law [and, thus, the warranty of seaworthiness] governs accidents suffered by a longshoreman who is injured on the dock by allegedly defective equipment owned and operated by his stevedore employer. We hold that under the controlling precedents, federal maritime law does not govern this accident. Nor, in the absence of congressional guidance, are we now inclined to depart from prior law and extend the reach of the federal law to pier-side accidents caused by a stevedore's pier-based equipment.

404 U.S. at 204, 92 S.Ct. at 420. The Court rejected this Circuit's view that the crucial question in these cases is whether the longshoreman is engaged in loading or unloading. "The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of 'loading' or 'unloading' ". 404 U.S. at 211, 92 S.Ct. at 424. Rejecting the analysis used by this Court in the present case and in Law, the Court stated:

> In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment which was part of the ship's usual gear or which was stored

---

1. The facts are detailed in our earlier opinion reported at 432 F.2d 388 (1970).

2. Our decision followed the settled law of this Circuit. *See* Deffes v. Federal Barge Lines, 5 Cir. 1966, 361 F.2d 422.

on board, the equipment which injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gang plank.

404 U.S. at 213, 92 S.Ct. at 426.

On January 10, 1972, 404 U.S. 1009, 92 S.Ct. 667, 30 L.Ed.2d 656, the Supreme Court vacated our decision in the present case and remanded the case to this Court "for further consideration in light of Victory Carriers, Inc. v. Law." Without attempting to determine which of the factors discussed by the Supreme Court in *Law* are necessary or sufficient to give a longshoreman a maritime cause of action, the present case must be reversed in light of *Law*. In the present case, as in *Law,* the longshoreman was injured by a stevedore's pier-based equipment while working on shore. Under *Law,* Chagois does not have a maritime cause of action based on the warranty of seaworthiness. Chagois may, however, have another cause of action cognizable in federal court or may be able to sue in federal court based on jurisdiction independent of 28 U.S.C. § 1333. We leave this determination to the district court in the first instance.

Reversed and remanded.