Jerry **MAY**

v.

**LEASE SERVICE, INC., et al.**

**Civ. A. No. 70–2074.**

United States District Court, E. D. Louisiana.

May 21, 1973.

Steven K. Faulkner, Jr., of Morphy & Freeman, New Orleans, La., for plaintiff.

William D. Hunter, of Lippman, Hunter & Rawls, Morgan City, La., John R. Peters, Jr., of Jones, Walker, Waechter, Poitevent, Carrère & Denègre, Geo. B. Matthews, Thomas W. Thorne, Jr., of Lemle & Kelleher, Mat M. Gray, III, of Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Frank A. Courtenay, Jr., of Leach, Grossel-Rossi & Paysse, Christopher Tompkins, of Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants.

CHRISTENBERRY, District Judge.

The plaintiff, Jerry May, was injured on August 9, 1969, when he fell from a fixed platform on which he was working in the Gulf of Mexico onto the deck of the M/V WANDERING STAR. At the time, he was employed by Lease Service, Inc., which operated and maintained the platform owned by Mobil Oil Corporation.

Defendant Dino Star, Inc., owner of the WANDERING STAR, has moved for dismissal or, alternatively, for summary judgment on the basis that maritime jurisdiction is lacking and that its vessel was not unseaworthy.

The accident occurred while Jerry May was off-loading some equipment from the WANDERING STAR moored

some forty feet below. During this operation, May employed a stiff-leg crane which was permanently affixed to the platform and powered by an electric drill inserted into its winch. The drill, in turn, received its motive power through its cable connection to the WANDERING STAR.

Plaintiff alleges that while he was operating the drill, it "bucked" and knocked him off the platform and onto the deck of the WANDERING STAR. The plaintiff contends that the unseaworthiness of the WANDERING STAR arose from a defect in the winch, namely that neither the drill nor platform was equipped with the proper safety plate which was necessary to hold the drill in place. Alternatively, the plaintiff contends that the captain and crew of the WANDERING STAR were negligent in failing to back away from the platform during the unloading and thereby created an unseaworthy condition.

Accidents such as this one which occur on fixed platforms are "no more under the maritime jurisdiction than accidents on a wharf located above navigable waters. . . ." Rodrigue v. Aetna Casualty Co., 395 U.S. 352, 366, 89 S.Ct. 1835, 1842, 23 L.Ed.2d 360 (1969). That is not to say that pier-side accidents can never be within the maritime jurisdiction, but to come within the maritime jurisdiction the case must pass the very substantial jurisdictional hurdle posed by Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

> "[T]he amphibious nature of the longshoreman's occupation creates frequent taxonomic problems. In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the . . . [equipment that injured him] was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank."
>
> 402 U.S. at 213–214, 92 S.Ct. at 426.

Prior to this Supreme Court decision, the settled law in the Fifth Circuit was that a plaintiff who had been engaged in the loading or unloading of a vessel could recover for the unseaworthiness of shore-based equipment. See Deffes v. Federal Barge Lines, Inc., 361 F.2d 422 (5th Cir.), cert. denied, 385 U.S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433 (1966). Victory Carriers rejected this statement of the law thus undermining this plaintiff's reliance upon Deffes. See Chagois v. Lykes Brothers S.S. Co., 457 F.2d 343 (5th Cir. 1972); cert. denied, 409 U.S. 1012, 93 S.Ct. 451, 34 L.Ed.2d 306 (1973).

However, Victory Carriers let stand Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), another case on which plaintiff relies. The Court distinguished this case, saying:

> "Gutierrez turned, not on the 'function' the stevedore was performing at the time of his injury, but, rather, upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers, which the Court held to be an 'injury, to person . . . caused by a vessel on navigable water' which was consummated ashore under [the Admiralty Extension Act] 46 U.S.C. § 740."
>
> 404 U.S. at 210–211, 92 S.Ct. at 424.

The plaintiff contends that the electrical power connection to the WANDERING STAR is sufficient to distinguish his case from Victory Carriers, that it converts the crane, winch and drill into an appurtenance of the vessel and thus brings his case under the shelter of Gutierrez.

Exactly which of the four elements of maritime jurisdiction enumerated in Victory Carriers are necessary and sufficient to confer maritime jurisdiction, the Fifth Circuit has thus far declined to explain. See Davis v. W. Bruns &

Co., 476 F.2d 246 (5th Cir. 1973); Chagois v. Lykes Brothers S.S. Co., *supra*. Though, in Davis v. W. Bruns & Co., *supra*, the court found that two guy wires that led from the unloading facility and were attached to the ship were not the type of attachment contemplated by *Victory Carriers*: "The facility here was permanently affixed to the shore, it was not an appurtenance of the ship, and it was never disconnected from the shore."

Admittedly, the power line connection that existed in the instant case was a more substantial link with the vessel than were the guy wires. Nevertheless, the crane and winch were permanently affixed to the platform. The drill was not equipment carried by the WANDERING STAR, but was brought onto the platform from another boat. The missing safety plate, which plaintiff contends caused the drill to "buck" and, consequently, plaintiff to fall, was supposed to be left at all times on the platform. And all of this equipment—crane, winch, drill, and safety plate—were the property of Mobil Oil Corporation.

As Judge Goldberg said in Davis v. W. Bruns & Co., *supra*, locality must be given "nearly controlling weight." The locus of this accident centers on the platform and has no causal connection with the WANDERING STAR. In fact, the line of causation is just the reverse of *Gutierrez, supra*, on which the plaintiff relies. In *Gutierrez* the cause of the accident emanated from the defective cargo being unloaded from the vessel and its injurious effects occurred on the pier. Here, the accident was initiated on the platform but consummated on the deck of the WANDERING STAR.

Under these circumstances, the cable connection between the drill and the vessel is insufficient to distinguish the instant case from *Victory Carriers, supra*, or to confer maritime jurisdiction under the protection of *Gutierrez, supra*. Accordingly, the motion of Dino Star, Inc. for summary judgment on the issue of unseaworthiness is granted.