Lawrence **WHITTINGTON**, Appellant,

v.

**SEWER CONSTRUCTION COMPANY, INC.**, Appellee.

No. 74–1234.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 30, 1974.

Decided May 12, 1976.

---

Thomas P. Maroney, Charleston, W. Va., for appellant.

Henry C. Bias, Jr., Charleston, W. Va. (Lively, Light & Bias, Charleston, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

BOREMAN, Senior Circuit Judge:

On motion of the defendant, Sewer Construction Company, Inc. (hereafter Company or defendant), the district court dismissed this suit for lack of asserted admiralty jurisdiction. From the judgment of dismissal the plaintiff, Lawrence Whittington (hereafter Whittington or plaintiff), prosecutes this appeal.

In his complaint, containing two counts, Whittington alleged that the jurisdiction of the district court arises under and by virtue of the admiralty and maritime jurisdiction of the district courts of the United States; that this is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure; that the defendant had in its possession and under its control a certain barge which was in navigation on the inland waterways of the United States, that is, on the Elk River in Kanawha County, West Virginia; that at all times mentioned in the complaint the plaintiff was employed on said barge by the defendant, "performing the work of a deckhand and seaman"; that while the plaintiff was a member of the crew of said barge working on the Elk River, within the terri-

torial jurisdiction of the district court as an "able-bodied seaman in connection with his assigned duties and tasks," the defendant was negligent in that the plaintiff was being lowered from an overhead bridge to said barge and, in being so lowered, the plaintiff fell into said barge and was thereby seriously injured. In the second count Whittington alleged that because of his injuries it became the duty of the defendant to furnish the plaintiff with prompt medical care, attention and medicine and "the expenses of his maintenances [sic] and cure." The complaint concluded with a demand for the sum of $150,000 for injuries, $10,000 for maintenance and cure, court costs and attorneys' fees, and a trial by jury.

After filing an answer the defendant, by leave of court, filed an amended answer alleging, in pertinent part, that the district court was without jurisdiction; that plaintiff's complaint fails to state a cause of action upon which relief could be granted; and that plaintiff is barred from recovery by virtue of the Workmen's Compensation statute of the State of West Virginia. The defendant denied, generally, the material allegations of the complaint, both in counts 1 and 2, and called upon plaintiff for strict proof.

The defendant took Whittington's discovery deposition and, at the time it moved for dismissal for lack of jurisdiction, the defendant moved that the discovery deposition be made a part of the record and the motion to dismiss. This was accomplished by a formal order.

At the time Whittington was injured he was 47 or 48 years old. His employer, the defendant, was engaged in the demolition of a bridge which spanned the Elk River in Kanawha County, West Virginia, and one section near the east bank of the river had partially collapsed. In that section a hole approximately twelve feet square had been cut in the bridge flooring and an open barge was moored in the water underneath the hole between a bridge pier and the river bank. As the bridge was dismantled some of the wood decking, steel, concrete, and portions of the bridge structure were loaded into the barge to be later towed away.

In his opening brief Whittington stated the question involved in the case as follows:

Did the Court err in ruling, as a matter of law, that the plaintiff was not a seaman, and, therefore, the Court did not have jurisdiction under the Admiralty or Maritime Laws of the United States? *

In his statement of the case he asserts in his brief that he filed his complaint alleging that he was a seaman, and that, as such, was entitled to recover under the admiralty laws of the United States for injuries sustained caused by the negligence of his employer and the unseaworthiness of the vessel "which he was assigned." Further, he alleges that on the day he was injured "he was performing the work of a deckhand and seaman on Barge ABL358"; that the defendant was negligent, and that the barge or vessel was unseaworthy, and that the defendant failed to provide proper methods of ingress and egress; that the question of whether or not plaintiff was a seaman, or doing the work of a seaman, at the time of the injury was a question of fact to be determined by a jury, and not a question of law to be determined by the court.

The sole question here is the very narrow one of the admiralty jurisdiction of the district court. The undisputed factual disclosures lead us to conclude that this controversy is not within the district court's admiralty jurisdiction. Consequently, we affirm the judgment dismissing the suit.

Turning to the discovery deposition of Whittington, we glean from the questions asked and his answers thereto certain facts which will be shown in the following four paragraphs.

At various times and for about twenty-one years of his adult life he had worked as

* The case was decided by the district court by granting the defendant's motion to dismiss for lack of jurisdiction. The court based its conclusion upon the pleadings, briefs, arguments of counsel and the discovery deposition of the plaintiff himself which deposition was made a part of the record by formal order without objection.

an overhead crane operator for different manufacturing plants and he had labored at different jobs, including seasonal work for the West Virginia Highway Department.

When employed by the defendant he was hired "as a crane and backhoe operator" on a bridge demolition job. Whittington checked out a crane for approximately two hours when he first went to work for the defendant and then he was put to work operating a pick, shovel and a jack hammer tearing up the concrete on the bridge deck. The west end of the bridge was intact and the workmen gained access to the bridge from that end as it was possible to drive trucks out on the bridge to help carry away the debris. Referring to the hole in the bridge flooring Whittington stated "You could have dropped a truck down through it if you had backed it up."

There was a barge in the river underneath the hole in the bridge which was for the purpose of "hauling away" the dismantled portions. Stationed on the bridge was a motored winch equipped with a drum and a cable line, the line running from the drum through a pulley on the superstructure of the bridge which was used for lowering materials through the hole in the bridge into the barge. There was a hook on the end of the cable and on the day before the plaintiff was injured he and another workman were, in turn, lowered through the hole in the bridge into the barge by means of the cable so they could detach bridge materials from the cable hook. On that occasion Whittington thought he worked there as much as "a half of a day." On the following day the plaintiff was directed to go into the barge again by the same means, riding the cable down with a "choker on the end." As the plaintiff explained—"A choker is a steel cable with two eyes in the end, one in one end and one in the other; that would be two loops." The choker was a piece of steel cable about five feet long; and he stated that he put his foot in the lower loop of the choker, the upper loop being fastened to the hook on the end of the winch's cable, and he grasped the cable line above the hook, above the top end of the choker line. In preparing to be lowered he was standing at the east side of the hole in the bridge and a short distance underneath there was a steel beam with a flange on it which went across the bridge below the flooring. He had one foot on the flange of the beam and put his other foot in the eye of the choker which was swinging free, preparing to descend into the barge. He had descended about five feet when the hook on the end of the cable rubbed against a piece of steel. As Whittington described it, "Well as I was going down, trying to push myself off the flange of the bridge, the hook caught on the flange of the bridge and rubbed the choker off—rubbed the eye off that hook, that is all. I just fell the rest of the way." A workman was on top of the bridge to push the whipline out so that plaintiff could descend into the barge but apparently the line was not pushed out far enough to avoid the flange of the steel beam. Plaintiff was injured when he landed on the debris and dismantled materials which had already been placed in the barge.

Near the end of his deposition Whittington stated that when he was employed he was supposed to have been the only skilled craftsman on the bridge, an "operator," but he wound up, in effect, doing laborer work which was what most of the other men on the demolition job did. He was asked the question whether, at any time, he considered himself an able-bodied seaman. He was instructed by his counsel not to answer. He was asked further whether, at any time from the time he was hired until he was injured, he understood that he was to work on a boat as such, and his counsel again objected. His deposition concluded, however, with interrogation by his own counsel and answers to the questions. His counsel asked whether he understood on the day before he was injured and the day on which he was injured that he was to work on a barge and he answered "The day before—I will phrase it this way: On the day before I got hurt, Gary Backland come to me and said, 'Larry, they need a guy to work down on the barge.' I said, 'All right; I don't mind.' "

**432**

One who seeks to recover for injuries in a suit based upon admiralty jurisdiction must show (1) that his injuries occurred upon navigable waters and had a maritime nexus, or (2) that the injuries were caused by a vessel in navigable waters or an appurtenance of the vessel, or (3) that the person injured was a seaman, a member of a crew of a vessel, injured in the course of his employment. *See Swanson v. Marra Brothers, Inc.,* 328 U.S. 1, 4–5, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); Admiralty Extension Act, 46 U.S.C. § 740; 7A J. Moore, Federal Practice, 2nd Ed. 1972, ¶ .325[4] at p. 3575.

It is clear that Whittington's injuries do not qualify under the first ground of admiralty jurisdiction as injuries occurring upon navigable waters *and* having a maritime nexus. For jurisdictional purposes we must look to the place where the incident occurred which ultimately gave rise to the cause of action. *T. Smith & Son, Inc. v. Taylor,* 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928);[1] *Hastings v. Mann,* 340 F.2d 910 (4 Cir. 1965).[2] In the instant case the tortious act which caused the plaintiff's injuries occurred while he was suspended from the shore-based winch. There is no allegation of negligence with respect to the barge. The alleged tortious conduct involved the shore-based winch and its attached "choker." Since the accident was "initiated" while the plaintiff was upon an extension of the land[3] and involved only shore-based equipment and conduct, no admiralty jurisdiction exists. *See May v. Lease Service, Inc.,* 365 F.Supp. 1202 (E.D. La.), *aff'd per curiam,* 487 F.2d 915 (5 Cir. 1973).[4] The mere fortuitous circumstance

1. In *T. Smith & Son, Inc. v. Taylor,* 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928), the plaintiff's decedent, a stevedore, while unloading a ship was struck by the sling of a ship-based winch, which knocked him from the pier apron on which he was standing and dropped him into navigable waters where he drowned. Although the Court found the deceased was engaged in maritime work, it concluded that no admiralty jurisdiction existed since "[t]he substance and consummation of the occurrence which gave rise to the cause of action took place on land." *Id.* at 182, 48 S.Ct. at 229. The subsequent passage of the Admiralty Extension Act, 46 U.S.C. § 740, would appear to have modified the rule of that case where the injury is caused by an appurtenance of a vessel, but, where, as in the case now before us, the injury is caused by shore-based equipment the rule is unchanged that when the event which "gave rise to the cause of action" occurred while the injured party "was upon the land" and is the "sole, immediate and proximate" cause of the injury, no admiralty jurisdiction exists.

2. The plaintiff in *Hastings v. Mann,* 340 F.2d 910 (4 Cir. 1965), was injured when he slipped and fell from the submerged end of a ramp designed for the launching of small boats. The plaintiff insisted that the accident gave rise to a cause of action in admiralty since he was standing at the submerged end of the ramp in navigable water when he slipped. We affirmed the district court's dismissal for lack of admiralty jurisdiction since the plaintiff had slipped from an extension of the land, the boat ramp. Judge Haynsworth, speaking for this court, observed, "The fact that the libelant's feet were awash, when he slipped and fell on the ramp, does not alter the nature and character of the ramp or enlarge Admiralty's jurisdiction to award damages for injuries occurring upon it." *Id.* at 912 (footnote omitted).

3. Whittington had one foot in the loop of the "choker" of the shore-based winch when the accident occurred. For jurisdictional purposes, a shore-based winch is treated as an extension of the land and not as a part of the vessel which it services. *See McCullum v. United Int'l Corp.,* 493 F.2d 501 (9 Cir. 1974); *Snydor v. Villain & Fassio et Compania Int'l Di Genova Societa Reunite Di Naviagaione, S.P.A.,* 459 F.2d 365 (4 Cir. 1972).

4. There is a remarkable similarity between the situation which confronted the court in *May v. Lease Service, Inc.,* 365 F.Supp. 1202 (E.D.La.), *aff'd per curiam,* 487 F.2d 915 (5 Cir. 1973), and the facts in the case now before us. In *May* the plaintiff was employed as a laborer on a "fixed platform" in the Gulf of Mexico. Plaintiff was using a makeshift crane which was permanently affixed to the platform to unload some equipment from a ship. The crane, which was powered by the ship's generators, malfunctioned, throwing plaintiff from the platform and onto the ship. The court dismissed the case for lack of admiralty jurisdiction, noting that the accident was "initiated" on the platform which was an extension of the land and the fact that plaintiff landed on the ship as a result of his fall was not relevant in determining jurisdiction.

that the winch line dropped Whittington onto the barge rather than onto the shore is insufficient to qualify his injuries as occurring upon navigable waters for jurisdictional purposes. *Bible v. Chevron Oil Co.*, 460 F.2d 1218 (5 Cir. 1972).[5] Since the alleged tort did not occur upon the navigable waters, it fails to meet the first of the above-stated conditions necessary to establish that ground of admiralty jurisdiction. We need not, therefore, consider whether the tort and the resultant injury had a maritime nexus.

It would seem equally clear that Whittington was not injured by a vessel in navigation or an appurtenance thereof. The winch from which Whittington fell was located on the bridge which was being demolished. It is well established that a bridge is not a vessel within admiralty jurisdiction. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 360, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Thus, the fact that the winch was attached to a bridge establishes that it was not an appurtenance of the vessel, even though it may customarily be utilized in loading operations. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); *McCullum v. United International Corp.*, 493 F.2d 501 (9 Cir. 1974). We conclude, therefore, that Whittington was not injured by a vessel in navigation or an appurtenance thereof, and that admiralty jurisdiction cannot be invoked upon this ground.

Having found the first two grounds for admiralty jurisdiction to be absent, our analysis must now turn to the third ground—whether the injured plaintiff was a "seaman," a member of the crew of a

vessel, injured in the course of his employment. Whittington appears to base his conclusion that admiralty jurisdiction *may* exist in this case upon the theory that Whittington suffered his injuries while "doing the work of a seaman" in the service of a vessel and that he is, therefore, entitled to the status of a "seaman" for the purpose of invoking the admiralty jurisdiction of the federal courts. We find the argument presented to support this proposition wholly unpersuasive. It represents a confusion of admiralty principles and constitutes a substantial departure from accepted jurisdictional standards.

There is a failure on the part of the plaintiff to distinguish "seaman" from "one who does the work of a seaman." The term "seaman" when used in a jurisdictional sense refers to one who is a "member of the crew" of a vessel. *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). The phrase "one who does the work of a seaman" is used to define the class of workers who are protected by the warranty of seaworthiness, and is applied only after jurisdiction has been found to exist. *See United Pilots Association v. Halecki*, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The Supreme Court in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), has rejected the idea that admiralty *jurisdiction* can be invoked by a shore-based worker, injured while ashore, based solely upon evidence that he was doing work traditionally done by a seaman at the time he was injured.[6]

5. *Bible v. Chevron Oil Co.*, 460 F.2d 1218 (5 Cir. 1972), involved a plaintiff who was "pulled off the drilling platform by a defective winch apparatus, striking a platform support beam before falling several more feet into the sea." *Id.* at 1219. The court noted that "[s]ince the substance and consummation of the occurrence giving rise to the injuries sustained took place on the drilling platform, the fact that Bible ultimately wound up in the drink does not transform this 'land based' injury into a maritime injury." *Id.* at 1219 (citations omitted). Although that case could be distinguished from the case now before us since the actual injuries

there resulted from striking the platform support beam which is an extension of land, the Supreme Court rejected such distinctions as inconsequential in *T. Smith & Son, Inc. v. Taylor*, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928). In *Smith* the Court refused, for jurisdictional purposes, to distinguish those injuries incurred upon the land from those incurred after the plaintiff fell into the water. 276 U.S. at 182, 48 S.Ct. 228.

6. Following is a quotation (footnotes omitted) from *Victory Carriers*, supra, 404 U.S. at 210–211, 92 S.Ct. at 424:

Here, there appeared to be a failure to distinguish jurisdiction on the one hand and the scope of available remedies on the other. As we said in *Garrett v. Gutzeit O/Y,* 491 F.2d 228, 231 (4 Cir. 1974):

> . . . There appears to be no little confusion concerning restrictions upon the right to recover under maritime law. This confusion is attributable, in great measure, to the fact that the scope of admiralty jurisdiction is not always equal to the breadth of the seaworthiness warranty. Thus careful consideration of the limits of admiralty jurisdiction is essential . . . .

Since the plaintiff in *Garrett* was a longshoreman injured while ashore, he could invoke admiralty jurisdiction only by showing that he was injured by an *unseaworthy* appurtenance of a vessel in navigable waters. Jurisdiction in that case was predicated solely upon evidence that plaintiff was injured by an appurtenance of the vessel. Assuming in the instant case that Whittington was, as a matter of law, *doing the work of a seaman,* that fact would be pertinent to a determination of the question of whether the warranty of seaworthiness extended to him, but would not determine the jurisdictional question.

A "seaman" as the term is used in a jurisdictional sense means one who is "permanently attached to and employed by . . . [a vessel] as a member of its crew." *Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 372, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957). A "member of the crew," as we interpret that phrase, refers to those employees of a vessel "who are naturally and primarily on board to aid in her navigation." *South Chicago Coal & Dock Co. v. Bassett,* 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732 (1940). Hence, one cannot invoke admiralty jurisdiction by alleging his status as that of a "seaman" merely because he happens to be injured while performing a task in the course of his employment which traditionally would be the task of a seaman. *Victory Carriers, Inc. v. Law, supra.*[7]

■■■■ Whittington's discovery deposition before the court below demonstrates the plaintiff was not a "seaman" and that he had no basis to support his assertion of admiralty jurisdiction. He was a laborer, employed to help demolish a bridge. Prior to the accident plaintiff's only contact with a vessel in navigation was that he had spent one day on board a barge tied to a pier of the bridge while helping to load scrap from the demolition of the bridge. On the day of the accident, plaintiff was being lowered by winch onto the barge to continue loading scrap. We are of the opinion that a mere shore-based worker, such as the plaintiff in this case, who has incidental and intermittent nonnavigational duties aboard a barge moored to a bridge is not a "seaman" for jurisdictional purposes. The following excerpted statement is of particular interest:

> Plaintiff further argues that he was entitled to a jury determination concerning the jurisdictional facts surrounding

---

It is argued, however, that if a longshoreman may recover for unseaworthiness if injured on a ship in the course of the unloading process, *Seas Shipping Co. v. Sieracki,* [328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)], and if he has an unseaworthiness claim for injuries sustained on the pier and caused by the ship's unloading gear, *Gutierrez* [v. *Waterman Steamship Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963)], he is also entitled to sue in admiralty when he is injured on the dock by his own employer's equipment at the time he is engaged in the service of a ship located on navigable waters. *Sieracki, supra,* however, did not call into question the extent of federal admiralty and maritime jurisdiction since the accident there

occurred on navigable waters. And in *Gutierrez, supra,* federal admiralty jurisdiction was clearly present since the Admiralty Extension Act on its face reached the injury there involved. *The decision in Gutierrez turned, not on the "function" the stevedore was performing at the time of his injury, but, rather, upon the fact that his injury was caused by an appurtenance of a ship . . . . The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of* "loading" *or* "unloading." . . . [Emphasis supplied.]

7. See note 6.

both his Longshoremen's and Jones Act claims. We find this contention likewise without merit. The controlling facts concerning the nature of the . . . structure and . . . [plaintiff's] duties thereon are clear. These are factual inflexibles requiring no further evidential elucidation. Accepting the facts most favorable to the plaintiff, there is no reasonable basis on which a jury could determine that he was injured upon navigable waters or that he was a seaman. . . . *Stanley v. Guy Scroggins Const. Co.*, 5 Cir. 1961, 297 F.2d 374; *Thibodeaux v. J. Ray McDermott and Co.*, 5 Cir. 1960, 276 F.2d 42.

*Labit v. Carey Salt Co.*, 421 F.2d 1333, 1335 (5 Cir. 1970).

There are dangers inherent in the shoreward encroachment of admiralty law, a body of law peculiarly suited to the high seas.[8] The plaintiff contends that he is entitled to assert a claim under the Jones Act, 46 U.S.C. § 688, if he can show that he was injured while doing work traditionally done by a seaman.

The Jones Act affords a remedy to all who fall within the class of "seamen."[9] But that remedy so provided would appear to be applicable to the class of persons defined as "seamen" for jurisdictional purposes.[10]

It seems that the plaintiff fails to distinguish the scope of the remedy available under the Jones Act and the scope of the remedy available under the warranty of unseaworthiness. Since the standards are different under the two theories of recovery there is a difference in the remedies and coverage. *See* 7A J. Moore, Federal Practice, 2nd Ed. 1972, ¶.325[1] at page 3501, note 1.

This court has previously had occasion to note that merely because one undertakes a task which is traditionally the work of a seaman, he is not automatically entitled to the remedy afforded "seamen" by the Jones Act. *Biggs v. Norfolk Dredging Co.*, 360

8. *See Garrett v. Gutzeit, O/Y*, 491 F.2d 228, 235–236 (4 Cir. 1974). The Supreme Court had earlier expressed its concern over the shoreward expansion of admiralty law:

We are not inclined at this juncture to disturb the existing precedents and to extend shoreward the reach of the maritime law further than Congress has approved. We are dealing here with the intersection of federal and state law. As the law now stands, state law has traditionally governed accidents like this one. To afford respondent a maritime cause of action would thus intrude on an area that has heretofore been reserved for state law, would raise difficult questions concerning the extent to which state law would be displaced or pre-empted, and would furnish opportunity for circumventing state workmen's compensation statutes. In these circumstances, we should proceed with caution in construing constitutional and statutory provisions dealing with the jurisdiction of the federal courts. . . .

That longshoremen injured on the pier in the course of loading or unloading a vessel are legally distinguished from longshoremen performing similar services on the ship is neither a recent development nor particularly paradoxical. The maritime law is honeycombed with differing treatment for seamen and longshoremen, on and off the ship. . . In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: *respondent Law was*

*not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship,* the forklift was not under the control of the ship, or its crew, and the accident did not occur aboard ship or on the gangplank. . . . At least *in the absence of explicit congressional authorization, we shall not extend the historic boundaries of the maritime law.* (Emphasis added) *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 211–214, 92 S.Ct. 418, 425–426, 30 L.Ed.2d 383 (1971) (footnotes omitted).

9. The Jones Act, 46 U.S.C. § 688, provides in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . .

10. Admiralty jurisdiction and the coverage of the Jones Act depends only on a finding that the injured was "an employee of the vessel, engaged in the course of his employment" at the time of his injury. (Citations omitted.) *Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 373, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957).

**436**

F.2d 360 (4 Cir. 1966). At page 364 the court stated, "However, if the claimant is not simply substituting in a single phase of a seaman's duties, but is a member of the crew, we see no reason why . . . he may not . . . sue his employer on the Jones Act."

 The Supreme Court has held that the passage of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.*) shows that Congress intended "to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters . . ." *Swanson v. Marra Brothers, Inc.,* 328 U.S. 1, 7, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); *accord, Lawrence v. Norfolk Dredging Co.,* 319 F.2d 805, 806 (4 Cir. 1963); *McKie v. Diamond Marine Co.,* 204 F.2d 132, 135–136 (5 Cir. 1953).[11] To qualify as a "member of the crew" under the Jones Act one must be more or less permanently attached to a vessel or fleet;[12] he must be one whose duties serve "naturally and primarily as an aid to navigation" in the broadest sense,[13] and the vessel must be in navigation.[14]

 The plaintiff in the instant case was a laborer who, in the course of his employment, was assigned to work on a barge and did work for a part of only one day prior to his accident. His duties related to the demolition of a bridge; not to the navigation of the barge. Such work wholly unrelated to the navigation of the barge does not qualify the plaintiff as a Jones Act "seaman." *See Ross v. Mobil Oil Corp.,* 474 F.2d 989, 991 (5 Cir. 1973). Pertinent is the following passage from *Burns v. Anchor-Wate Co.,* 469 F.2d 730, 733 (5 Cir. 1972):

For it is here uncontroverted that decedent was not more or less permanently attached to a vessel or a specific fleet of vessels. He neither took his meals or slept on any of the barges or their towing vessels. Nor did he perform any function necessary to the operation of either the barge upon which he was injured or any of the other numerous barges upon which he assisted in the loading/unloading of pipe. . . .

The court in *Burns* affirmed the entry of a directed verdict for the defendant on the Jones Act claim, holding that the plaintiff was not a "seaman" as that term is used in the Jones Act.

In his discovery deposition, under oath, which was made a part of the motion to dismiss and a part of the record, *without objection,* Whittington had the opportunity to state facts to support his general allegations of the complaint with respect to the district court's jurisdiction.

In its memorandum decision and order of dismissal the district court discussed the normal requirements which must be met in order to establish admiralty and maritime jurisdiction. The court noted that the record in the case, particularly the plaintiff's own deposition, discloses that Whittington was employed by the defendant as a crane operator and laborer in the demolition of a bridge; his primary work was on the bridge, not an instrument or structure in navigation; the tort or wrong or negligence which resulted in his injury was committed on the bridge; he fell onto the barge with which he had no permanent relation or connection; he was not a member of a barge crew aboard in aid of navigation;

---

11. The complaint also sets forth a claim for maintenance and cure. An excellent discussion of the status of one as a "seaman" under the Jones Act and the effect of such a finding upon entitlement to maintenance and cure can be found in the opinions of Chief Judge Clark (for the court) and Judge Lumbard (dissenting) in the case of *Weiss v. Central Railroad Co.,* 235 F.2d 309 (2 Cir. 1956). That case draws heavily upon the limitations placed upon the Jones Act by the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.*).

12. *Burns v. Anchor-Wate Co.,* 469 F.2d 730 (5 Cir. 1972).

13. *Harney v. William M. Moore Bldg. Corp.,* 359 F.2d 649, 654 (2 Cir. 1966).

14. *Tuder v. Material Service Corp.,* 177 F.Supp. 71 (N.D.Ill.1959). However, as that case makes clear, the mere fact that the vessel is moored to a wharf or structure does not mean that it is not in navigation.

unseaworthiness of the barge was not the cause of his injury; the wrong which caused the injury must bear some significant relationship to admiralty activity in order to invoke the admiralty and maritime jurisdiction of this court.

In colorful and forceful language, the district court stated further:

> Judicial imagination, despite the creative language of the complaint, is not sufficiently elastic to transform plaintiff, a laborer on a bridge demolition job, into a seaman or member of a barge crew in order to satisfy admiralty and maritime jurisdictional requirements. . . .
> Plaintiff's deposition does not sustain his position on jurisdiction and generalizations and conclusions in the complaint and in memoranda presented by counsel do not sustain the burden of proof placed on plaintiff by defendant's motion to dismiss.

We conclude that the judgment of the district court must be affirmed.

*Affirmed.*

WIDENER, Circuit Judge (dissenting)

I respectfully dissent.

The question here is whether the district court had jurisdiction of the plaintiff's claim for personal injuries filed under the Jones Act, 46 U.S.C. § 688, and for maintenance and cure under general admiralty law. No claim was made in the complaint that the vessel or her appliances were not seaworthy.

The district court found the plaintiff was not a seaman, concluded that it had no jurisdiction, and dismissed the complaint. I am of opinion that whether or not the plaintiff was a seaman, or a member of a crew, is a matter of fact which should not have been conclusively decided adversely to the plaintiff solely on the basis of his pretrial deposition, and would remand for further consideration.

I emphasize now, as will later become apparent, that the plaintiff's claims for personal injuries are asserted as negligence under the Jones Act as well as under the historic claim for maintenance and cure, a general claim in admiralty. Nowhere in the case prior to appeal did the plaintiff assert that the vessel involved, or any of her appliances, was unseaworthy. While I realize that pleading under the Federal Rules of Civil Procedure is quite liberal, because of the decision of the district judge that he had no jurisdiction and the different antecedents of the three sources of recovery for an injured seaman, the omission of the claim for unseaworthiness should be noted.[1]

Historically, of course, as traced by court decisions, a seaman had a right of indemnity on account of personal injuries occasioned by the unseaworthiness of the vessel and its appliances, the measure of damages in which was largely coextensive with damages for injuries to the person in an ordinary tort claim. Absent unseaworthiness, he had no cause of action on account of negligence of the owner. In addition to the damages for breach of warranty of seaworthiness, the seaman had the right to claim maintenance and cure, generally consisting of lost wages and medical care and attention brought about by injury or sickness. He had this latter right if he were in the service of the ship at the time the injury occurred, and maintenance and cure depended neither on a breach of warranty of seaworthiness nor on the negligence of the owner, but accrued to a seaman who became sick or injured in the service of the ship. The Jones Act then added to the remedies of a seaman, allowing him to recover on account of negligence of the owner. This was an additional remedy. So it is possible for a seaman to have three causes of action arising from the same injury. H. Baer, *Admiralty Law of the Supreme Court*, Ch. I (2d ed. 1969).

1. In *Usner v. Luckenback Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), the court stated that it had "repeatedly taken pains to point out that liability based on unsea- worthiness is wholly distinct from liability based on negligence." 400 U.S. at 498, 91 S.Ct. at 517.

The plaintiff here was a laborer employed by the defendant, Sewer Construction Company, Inc., in the demolition of a bridge crossing the Elk River at Charleston, West Virginia. Not before us is any question whether or not the Elk River is navigable water or whether or not the barge involved was a vessel in navigation. Barge ABL 358 was in the possession and under the control of the defendant and was moored alongside one of the piers of the bridge, in the river, with about twenty feet of water between the barge and the bank. The wood decking and steel from the bridge as it was being dismantled were being loaded into the barge which was to be hauled away upon completion of the job.

The plaintiff apparently had worked on the bridge structure until the day before his injury, a period of about three weeks. The day before the injury, he had worked on the barge. The men on the bridge would lower the dismantled wood and steel down to the barge with a winch, and the plaintiff and another man would unhook it from the winch and load the material into the barge. There is no suggestion the barge had any cargo other than the wood and steel from the dismantled bridge. In order to get onto the barge, the men working on it in loading its cargo would be lowered by the winch by means of what the plaintiff calls a choker. The choker consisted of a piece of wire rope about five feet long with an eye in either end. One eye of the choker was placed in a hook on the end of the winch line. The plaintiff would place one foot in the eye of the choker and hold on above the hook to the winch line, in which position he would then be lowered to the barge. On the second day the plaintiff was to work on the barge, while being lowered, the hook on the winch line caught on a flange of the bridge, rubbed the eye of the choker off the hook, and the plaintiff fell more than thirty feet into the barge, suffering serious personal injuries. Plaintiff's complaint under the Jones Act alleges negligence on the part of the defendant generally and in seven different aspects in particular, for which he claims damages for total and permanent disability, in addition to which, in a sepa-rate count, plaintiff claims $10,000 for maintenance and cure.

Since the plaintiff asserted no claim prior to appeal as to the unseaworthiness of the vessel or its appliances, we should have no occasion to consider whether or not admiralty jurisdiction might be defeated as to that claim, assuming the sole unseaworthy appliance to have been the shorebased winch and its attendant choker. *McGowan v. Gillenwater,* 429 F.2d 586 (4th Cir. 1970); Cf. *Garrett v. Gutzeit O/Y,* 491 F.2d 228, 236 (4th Cir. 1974); *Victory Carriers v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

The question before us is whether the plaintiff, Whittington, was necessarily precluded from being found a seaman which he must be to entitle him to assert his claims under the Jones Act and for maintenance and cure. The evidence is uncontroverted that the day before the injury Whittington had worked on the barge loading its cargo of steel and wood which was lowered into the barge by means of the winch. As was noted by the Supreme Court in *Seas Shipping Company v. Sieracki,* 328 U.S. 85, 96, 66 S.Ct. 872, 878, 90 L.Ed. 1099 (1946) (a longshoreman's case unlike the case here):

"Historically the work of loading is the work of the ship's service, performed until recent times by members of the crew . . . [t]hat the owner seeks to have it done with the advantages of more modern divisions of labor does not minimize the worker's hazard and should not nullify his protection."

The plaintiff here has alleged that he "was employed on said barge by the defendant, performing the work of a deckhand and a seaman," that he "was a member of the crew of said barge, working on the Elk River," and was "an ablebodied seaman in connection with his assigned duties and tasks." While it may be true that all of plaintiff's duties during the entire period of his employment, as revealed by his discovery deposition, may not have been, strictly speaking, the duties of a seaman, for during the first part of his employment he had worked on the bridge structure rath-

er than on the barge, the day before the injury he had worked storing the cargo on the barge, a seaman's duty, and he was being lowered to the barge to perform this duty at the time he was injured. Nothing in the record before us indicates that the plaintiff's service on board ABL 358 was of any duration other than indefinite.

In *Swanson v. Marra Bros.,* 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946), the Supreme Court held that the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq., confine the benefits of the Jones Act to the members of a crew of a vessel plying in navigable waters and that "it leaves unaffected the rights of the members of a crew of a vessel to recover under the Jones Act when injured while pursuing their maritime employment whether on board . . . or on shore." *Id.* at 7–8, 66 S.Ct. at 872.[2] Thus, whether the injury to the plaintiff here may be said to have occurred when he landed in the barge or at the time his injury became inevitable (where the eye of the choker came off the hook) is of no moment. If the plaintiff were a seaman in the service of the vessel, he is entitled to assert a claim under the Jones Act. Likewise, the claim for maintenance and cure does not depend in this case on whether or not the plaintiff was on board or on shore. If he was a seaman in the service of the vessel at the time, he is entitled to assert the claim. 328 U.S. at 4, 66 S.Ct. 869. This is made clear by *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), in which the court held that two seamen, proceeding from the ship going on shore leave, were entitled to maintenance and cure when injuries occurred when one fell into an open ditch on the pier and the other was injured by a motor vehicle on the roadway he had to traverse in order to return to the ship. In *Aguilar,* the court confined its ruling to instances where the seaman was either going from or returning to the ship. Whittington, of course, was being lowered to his place of work on the barge when the injuries occurred which are complained of here.

In *Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), *reversing* 7 Ill.App.2d 307, 129 N.E.2d 454 (1955), the plaintiff was employed by the dredging company to assist with dredging operations in a slough being dug to bypass a rocky section of the Mississippi River. His work was that of a handyman; it included carrying and storing supplies and general maintenance of a dredge. He was injured by the explosion of a coal stove while placing signal lanterns from the dredge in a shed on the neighboring bank. He sued under the Jones Act, and the court recited that in order to recover he "had to be a member of a crew." The court there followed *South Chicago Co. v. Bassett,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940), and held that whether or not the plaintiff, in his suit under the Longshoremen's Act, was a member of a crew turns on questions of fact, and held that admiralty jurisdiction and the coverage of the Jones Act depends "only on a finding that the injured was 'an employee of the vessel engaged in the course of his employment' at the time of the injury." 352 U.S. at 373, 77 S.Ct. at 417. The court stated that whether or not the plaintiff was a member of the crew "is to be left to the finder of fact," *id.* at 374, 77 S.Ct. at 417, and that a jury would have the same discretion in determining this matter as any other fact.

This position was reaffirmed by the Supreme Court in its decision in *Grimes v. Raymond Concrete Pile Co.,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958). In that case, the appellant, Grimes, was employed by the defendant to assist in erecting a Texas Tower—a triangular metal platform constructed some 60 feet above the surface of the sea on supports permanently affixed to the floor of the ocean, and utilized to operate a radar warning station. The ap-

---

**2.** We do not have before us any question as to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq., the effect of its amendments, or any question concerning state workmen's compensation. The sole question here is the very narrow one of the admiralty jurisdiction of the district court.

pellant was a member of the Pile Drivers Union and was hired solely as a pile driver. When the tower was towed to sea, Grimes, along with 25 other workmen, lived on the tower and performed certain functions to aid in its erection.

Six days after the tower had been permanently anchored, the appellant and several other workmen were assigned to work on a nearby barge. Their only function was to prepare the materials on board the barge for transfer to the tower—a task that took approximately six hours. Following completion of the work aboard the barge, the appellant was transferred back to the tower by means of a life ring from a tug. It was during his transfer to the tower that Grimes was injured.

The First Circuit affirmed a directed verdict entered by the district court in favor of the defendant on the grounds that Grimes was clearly not a "member of a crew of any vessel." That court went on to state:

> "[I]t could not possibly be said that he [Grimes] was injured in the course of his employment as [a] crew member, for his work on the barge was all through, and he was injured while being transferred from the tug back to the Texas Tower. Furthermore, appellant's presence on the barge was only sporadic or temporary, not measuring up to the requirements of 'a more or less permanent connection between the ship and the worker'. . ."

245 F.2d 437, at 440. The Supreme Court reversed the Court of Appeals, however, and held that, on these facts, there was an evidentiary basis upon which the jury could decide whether or not the appellant was a member of a crew of any vessel. In so doing, the court cited with approval its earlier decisions in Senko and South Chicago.

Thus, given the Supreme Court's decisions in Senko and Grimes, it seems that a showing that a man employed in working on a barge, admittedly for our purposes in navigation or in navigable waters, is at least sufficient to invoke the admiralty jurisdiction of the court, and warrant further factual inquiry.

In passing, it should be noted that maintenance and cure is an incident to employment. Whether a claimant is entitled to it depends at least in part upon his status. O'Donnell v. Great Lakes Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943). Whether the seaman must be such in the primitive sense of the word, Bellomy v. Union Concrete Pipe Co., 297 F.Supp. 261, 265 (S.D.W. Va.1969), aff'd 420 F.2d 1382 (4th Cir. 1970), or whether his status as a Jones Act seaman may be considered interchangeably in claims for maintenance and cure, Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 169 (2d Cir. 1973), is, I think, a question not necessary or appropriate to decide now on the quite meager record before us.

While the facts in this case are not fully developed, and I intimate no opinion as to whether or not the plaintiff should ultimately be held to be a member of the crew of the barge in question or a seaman, I submit it is uncontradicted that the sole deposition in evidence, which contains the only facts before us, does show that the last work the plaintiff performed for his employer was on the barge and was that of loading cargo, and that he was in the process of being lowered into the vessel to continue this work aboard ABL 358 at the time of his injury. Since the loading of cargo is traditional seaman's work, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 96, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), since Whittington was employed on board the barge, and since whether or not Whittington was a seaman, a member of the crew of a vessel, is a matter of fact, South Chicago, 309 U.S. at 374, 60 S.Ct. 544, I am of opinion that the dismissal of the complaint for want of jurisdiction, both as to the Jones Act claim and as to the claim for maintenance and cure, was erroneous. The facts of this case as they appear in their limited way before us now would seem to make as strong a case for jurisdiction as that of the plaintiff in Grimes, above referred to, as well as in Butler v. Bridgeman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958), a Jones Act case in which the plaintiff was employed around

a wharf, and on the morning in question had been engaged in cleaning the boiler of a tug which had been out of service and without crew for months prior to the accident.

In the case here, I think the pleadings and discovery deposition show enough to prevent the dismissal of the case for want of admiralty jurisdiction. This case is similar enough to that class of federal question cases in which the jurisdictional facts and the facts upon which recovery must depend are to some extent the same and comingled, to warrant a rule that courts should be slow in dismissing for want of jurisdiction, for so to do may very well deprive a party of his day in court. See, *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Osborne v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 818, 6 L.Ed. 905 *et seq.* (1824). Because "admiralty jurisdiction over the suit" as to the Jones Act claim "as in the case for maintenance and cure" does not depend on the place where the injury was inflicted "but on the nature of the service and its relationship to the operation of the vessel," *O'Donnell v. Great Lakes Co.,* 318 U.S. 36, 42–43, 63 S.Ct. 488, 492, 87 L.Ed. 596 (1943), I submit the judgment of the court dismissing the case for lack of jurisdiction should be vacated and the case remanded for further proceedings.

Whether Whittington was a seaman is a matter of fact which I suggest should not have been adversely and conclusively decided against him on the basis of a mere pre-trial deposition. It is well established that in ruling "[o]n summary judgment the inferences to be drawn from the underlying facts contained in such materials [supporting the motion] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Whittington, then, is entitled to all favorable factual inferences which I do not think he has been accorded. Moreover, his status as a seaman is a common fact going to both the merits of the case as well as to the jurisdiction of the court. Under *Bell v. Hood* and *Osborne v.*

*Bank of the United States,* it is my opinion that the court should have proceeded to the merits, and, if the case were later dismissed, it should have been on the merits, not for want of jurisdiction. This, it appears to me, is consistent with the procedure outlined by the Supreme Court in *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1956). There the court reversed a district court determination that a corporate defendant in a stockholders derivative suit should be realigned as a party plaintiff since the corporation was antagonistic to the defendant stockholder's position. After taking evidence, the district court ruled on the fact of antagonism which destroyed the diversity jurisdiction of the court and resulted in a dismissal of the complaint. The Supreme Court found that the gist of the district court's findings went as well as to the merits of the underlying dispute as to the question of jurisdiction. As was there pointed out, the proper course of conduct would have been to try the case on the merits rather than denying the parties their day in court by delving into the merits of the underlying dispute in an attempt to resolve a preliminary jurisdictional matter.

I am thus of opinion that the question of Whittington's status as a seaman, being one which goes not only to the merits of the controversy but also to the jurisdiction of the court, should not be decided upon the preliminary motion for summary judgment, since, if all factual inferences were taken favorably to the plaintiff, the jurisdiction of the court would have been established to the extent necessary to warrant further factual inquiry.